## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Daniel D. Domenico

Civil Action No. 1:22-cv-00388-DDD-SKC

DUSTIN ALAN ROWLAND,

      Plaintiff,

v.

ANDRE MATEVOUSIAN, Regional Director of the North Central Regional Office of the Federal Bureau of Prisons;
WILLIAM TRUE, Warden of FCI Florence;
SHARI HIMLIE, Health Service Administrator, FCI Florence;
JOHN DOES 1-5;
JANE DOES 1-5; and
UNITED STATES OF AMERICA,

      Defendants.

---

### ORDER DISMISSING CASE

---

Dustin Rowland is a federal inmate who brings claims against the United States and prison officials who supervised his incarceration. This case arose from the Defendants' allegedly insufficient treatment of Mr. Rowland's umbilical hernia, which was diagnosed while he was in pretrial detention. Mr. Rowland's allegations fail to state a claim for damages under the Eighth Amendment, and he has not exhausted his Eighth Amendment claim for injunctive relief or his claims under the Federal Tort Claims Act. The Defendants' Motion to Dismiss is therefore granted as to the Eighth Amendment claim for damages, and their Motion for Summary Judgment is granted as to the Eighth Amendment claim for injunctive relief and the FTCA claims.

BACKGROUND

## I.  Facts[1]

Mr. Rowland was incarcerated in the Federal Correctional Institution in Florence, Colorado. Doc. 45 ¶ 5. Defendants are the Regional Director of the North Central Region for the Federal Bureau of Prisons, the Warden of FCI Florence, the Health Administrator of FCI Florence, ten unidentified federal officers, and the United States of America. Mr. Rowland alleges that while in pretrial detention in 2018, prior to being transferred to FCI Florence, he was diagnosed with an umbilical hernia that resulted from an inmate fight. *Id.* ¶¶ 2-3, 13. In November 2019, he was examined by a doctor who recommended surgery. *Id.* ¶ 14. At his sentencing in June 2020, the United States District Court for the Northern District of Texas recommended that Mr. Rowland receive immediate care for his hernia. *Id.* ¶ 3.

Upon being transferred to FCI Florence in September of 2020, Mr. Rowland was given a medical evaluation, after which he requested surgery for his hernia. Doc. 45-36. His request was denied the next month by the Bureau of Prisons Utilization Review Committee because the doctor referring him for a surgery consultation had also indicated that the hernia was "reducible and stable" if treated with "conservative management." *Id.* Mr. Rowland had been issued an abdominal binder and a pass guaranteeing access to a bottom bunk. *Id.* He was instructed on how to manage his hernia by wearing the binder and "massag[ing] [his] hernia while lying in flat, position [sic] not sitting or standing." *Id.*

---

[1]  These facts are drawn from Mr. Rowland's Amended Complaint, Doc. 45, and the exhibits attached thereto. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (in ruling on a motion to dismiss, courts may consider documents that the complaint incorporates by reference).

Mr. Rowland subsequently made multiple requests for additional treatment and surgery to address his hernia, cysts on his liver, complications with his intestines, and increased pain. Doc. 45 ¶¶ 4, 22-24. These requests included attempts to avail himself of the BOP Administrative Remedy Program. *See* 28 C.F.R. §§ 542.10-542.19. That program allows a prisoner to seek relief through the filing of consecutive administrative forms: first, the inmate must attempt informal resolution with prison staff by submitting a form known as a BP-8; second, the inmate must submit a formal written request to the warden by filing a form BP-9; third, the inmate must appeal to the regional director by filing a form BP-10; and fourth, the inmate must appeal to the national inmate appeals director by filing a form BP-11. *See* 28 C.F.R. §§ 542.13-542.15; *Fernandez-Perez v. Greilick*, No. 20-cv-03129-LTB-GPG, 2021 WL 11486236, at *2 (D. Colo. Feb. 23, 2021) (R. & R.), *adopted by Fernandez-Perez II*, 2021 WL 11486240 (D. Colo. Mar. 12, 2021), *aff'd, Fernandez-Perez III*, No. 21-1116, 2021 WL 4515253 (10th Cir. Oct. 4, 2021).

On December 14, 2020, Mr. Rowland submitted an Informal Resolution Form BP-8 to prison officials at FCI Florence, requesting hernia repair surgery. Doc. 45-33. His request was denied by prison health services, and he was informed that his intake medical assessment stated his "hernia [was] reducible and stable." *Id.* On December 21, Mr. Rowland submitted a Request for Administrative Remedy Form BP-9. Doc. 45-36. A warden denied his request with the recommendation that he continue the conservative management of his hernia. *Id.* The record does not reflect, and the complaint does not allege, that Mr. Rowland appealed that denial to the regional director.

Mr. Rowland submitted additional requests to prison staff in December 2020 and January 2021 regarding his ongoing pain. Docs. 45-37,

45-38. He was advised to try ibuprofen or Tylenol, and he was told that he had a follow-up doctor's appointment scheduled in the near future. Docs. 45-37, 45-38. On August 2, 2021, Mr. Rowland submitted another Request for Administrative Remedy Form BP-9, complaining of "constant pain" and requesting surgery for his hernia. Doc. 45-40. When that request was denied, Mr. Rowland submitted a Regional Administrative Remedy Appeal Form BP-10. Doc. 45-41. That appeal was addressed by the regional director for inmate appeals, who stated that "[a] routine consultation for evaluation by general surgery was requested and approved. That appointment is scheduled, however, due to safety and security concerns you will not be notified of the date of that appointment." *Id.* The regional director "defer[ed] diagnostic and treatment interventions to the Health Services staff at the local level." *Id.* On October 20, Mr. Rowland once again appealed, this time by submitting a Central Office Administrative Remedy Appeal Form BP-11. Doc. 45-42. This appeal was rejected as procedurally deficient for failure to include an "institution administrative remedy request (BP-9) form or a copy of the . . . response from the Warden." *Id.* Mr. Rowland was given fifteen days to cure this deficiency. *Id.* But the record does not reflect that he took any further action. Mr. Rowland alleges that he was not furnished with the proper forms or copies of the necessary documents to resubmit his appeal. Doc. 45 ¶ 23. He states that "[h]e has filled out and submitted numerous forms BP-8, BP-9, BP-10, and BP-11," but he does not specifically allege that he corrected, or attempted to correct, the procedural deficiency that resulted in the rejection of his October 20, 2021 appeal to the central office. *Id.*

## II. Procedural History

On February 11, 2022, Mr. Rowland filed this suit against the Regional Director for the BOP, bringing claims for violation of the Eighth

Amendment, negligence, and gross negligence, and seeking both monetary damages and injunctive relief. Doc. 1. Mr. Rowland moved for a preliminary injunction seeking immediate surgery, which ultimately was made moot when he underwent surgery in May 2022. Docs. 2, 22, 23.

In August 2022, Mr. Rowland filed an Amended Complaint, adding claims against the Warden and Health Service Administrator of FCI Florence, and against ten unidentified federal officials who allegedly participated in the underlying events. Doc. 45. In September 2022, pursuant to the Federal Tort Claims Act, the United States was substituted as the sole defendant with respect to Mr. Rowland's negligence and gross-negligence claims. Docs. 49, 50. Thus, the claims currently at issue are: (1) an Eighth Amendment claim against the defendant federal officials; and (2) negligence and gross-negligence claims under the FTCA against the United States. In December 2022, Defendants concurrently filed both a motion to dismiss and a motion for summary judgment. Docs. 54, 55.

## LEGAL STANDARDS

Defendants alternatively seek dismissal or summary judgment on all claims.[2]

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a judge "accept[s] as true all well-pled allegations, resolving all doubts in favor of the complainants." *Lone Star Indus., Inc. v. Horman Fam. Tr.*, 960 F.2d 917, 920 (10th Cir. 1992). But judges need

---

[2] Mr. Rowland "objects to the filing of two simultaneous dispositive motions," but he cites to no rule of procedure or other legal authority that precludes Defendants from doing so. Doc. 59 at 5 n.1. Indeed, my Practice Standards contemplate that a party may wish to file more than one summary-judgment motion. *See* DDD Civ. P.S. III(A)(2).

not accept "conclusory" allegations or "bare assertions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). A complaint need not contain detailed factual allegations to state a claim for relief, but the facts alleged must be enough to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). To survive a motion to dismiss, the complaint must contain sufficient factual allegations that, accepted as true, allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. "[T]he sufficiency of a complaint must rest on its contents alone," and a court "typically must not look outside the pleadings when deciding a motion to dismiss."[3] *Gee*, 627 F.3d at 1186.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). On a motion for summary judgment, the moving party bears the burden of demonstrating no genuine issue of material fact exists. *Adamson*, 514 F.3d at 1145. The summary-judgment standard is largely the same as that applied to a motion to dismiss. *See Pena v. Greffet*, 108 F. Supp. 3d 1030, 1063 n.16 (D.N.M. 2015). On summary judgment, however, rather than assessing the factual allegations in the complaint, courts must assess the evidence the parties have put forward. *Id.*; *see*

---

[3] Mr. Rowland presents additional factual allegations in a declaration attached to his response to the defendants' motion to dismiss. Doc. 58-1. These allegations cannot be factored into a ruling on the motion to dismiss. But even if I were to consider these allegations, my legal analysis as to the motion to dismiss would not change.

*also World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985) (court may only consider admissible evidence in ruling on summary-judgment motion).

## MOTION TO DISMISS

I. **Mr. Rowland's Eighth Amendment claim for damages must be dismissed because there is no *Bivens* remedy in this context.**

Mr. Rowland claims that the Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment because they acted with deliberate indifference to his medical needs by denying his requests for hernia surgery and failing to provide him with adequate post-operative care. Mr. Rowland seeks monetary damages for this violation as a "civil action arising under the constitution," relying on *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 399 (1971). Doc. 45 ¶ 29. The Supreme Court in *Bivens* created an implied remedy for a plaintiff to recover damages from federal agents who violated the plaintiff's Fourth Amendment rights, "despite the clear absence of textual support in the Fourth Amendment or authorization from Congress." *Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022). Because of the textual departure required for a *Bivens* claim, the precedent has been restricted in its applicability. *Egbert v. Boule*, 142 S. Ct. 1793, 1806 n.3 (2022) (inferring a *Bivens* remedy "is an extraordinary act"). "*Bivens* is well-settled law in its own context, but expanding the *Bivens* remedy to other contexts is now considered a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (quoting *Iqbal*, 556 U.S. at 675).

*Bivens* claims are analyzed under a two-step framework. *Id.* at 139-41. First, a judge determines whether the claim arises in a "new

context" from *Bivens* or one of the other two cases where the Supreme Court has found the remedy appropriate. "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court], then the context is new." *Id.* at 139. Second, if the context is "new," a judge must determine whether there are any "special factors" that counsel against allowing a *Bivens* action in that new context, such as existing administrative remedies to address the plaintiff's injury. *Id.* "The Court's precedents now make clear that a *Bivens* remedy will not be available [in a new context] if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* at 136 (quoting *Carlson v. Greene*, 446 U.S. 14, 18 (1980)).

### A.  Mr. Rowland's claim presents a new context for *Bivens*.

Mr. Rowland's claims are distinguishable from the contexts in which the Supreme Court has recognized *Bivens* claims. To date, the Supreme Court has recognized a *Bivens* remedy in only three cases: *Bivens* itself, *Davis v. Passman*, 442 U.S. 228 (1979), and *Carlson v. Greene*, 446 U.S. 14 (1980). Although *Carlson* comes closest, none of these three prior cases reflect the same context presented in this case.

*Bivens* and *Davis* are clearly distinguishable. *Bivens* concerned the Fourth Amendment's prohibition against unreasonable searches and seizures, and *Davis* involved an equal-protection claim for gender discrimination. Neither arose in a context like this case, a point that Mr. Rowland does not dispute.

*Carlson* concerned the adequacy of medical care in a prison setting and presents a closer scenario to this case. In *Carlson*, the plaintiff alleged that prison officials, against the advice of doctors, failed to give an inmate competent medical attention for some eight hours after he had an asthmatic attack; administered contraindicated drugs that made his

attack more severe; attempted to use a respirator known to be inoperative, which further impeded his breathing; and delayed for too long a time his transfer to an outside hospital. *Carlson*, 446 U.S. at 16 n.1. The inmate died as a result, and the plaintiff alleged that the prison officials were deliberately indifferent to the inmate's serious medical needs and that their indifference was in part attributable to racial prejudice. *Id.* The claim in that case was brought by the estate of the deceased inmate. *Id.* at 16. The Supreme Court entertained the cause of action under *Bivens* and found a violation of the Eighth Amendment's prohibition against cruel and unusual punishment under the standard set forth in *Estelle v. Gamble*, 429 U.S. 97 (1976). Mr. Rowland argues that his suit is effectively the same: an allegation of failure to provide constitutionally adequate medical care while incarcerated by federal officials.

But that is too high a level of generality to satisfy the Supreme Court's direction in this area. It has recently explained that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). The context of *Carlson* cannot be reduced to "failure to render necessary medical care to avoid pain and suffering." Doc. 58 at 10. That generalization is at odds with cases from other courts and this District that meet that description, but in which courts nevertheless found a new context was presented. *See, e.g.*, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) (new context where halfway-house inmate brought Eighth Amendment claim with similarities to *Carlson* against private entity under contract with BOP rather than against individual federal officials); *Nellson v. Doe*, No. 21-6206, 2023 WL 3336689, at *4 (4th Cir. May 10, 2023) (new context where prisoner brought Eighth Amendment claims alleging BOP administrators were deliberately indifferent to medical needs when they

placed him in SHU without walker or wheelchair despite his inability to walk without assistance); *Qazi v. Seroski*, No. 22-cv-00014-PAB-MEH, 2023 WL 3871969, at \*5 to \*6 (D. Colo. May 11, 2023) (R. & R.) (new context where inmate brought Eighth Amendment claims alleging BOP medical staff provided inadequate pain management for chronic but not life-threatening back condition), *adopted by* 2023 WL 3866406 (D. Colo. Jun. 7, 2023); *Noe v. United States*, No. 1:21-cv-01589-CNS-STV, 2023 WL 179929, at \*3 (D. Colo. Jan. 13, 2023) (new context where prisoner brought Eighth Amendment claims alleging inadequate dental care).

Defendants support the distinction between this case and *Carlson* with four significant differences that meet the "easily satisfied" standard for a new context. *Ziglar*, 582 U.S. at 149. These four differences are: (1) the inmate in *Carlson* died, while Mr. Rowland did not; (2) *Carlson* presented a medical emergency that resulted in death in a mere eight hours, while Mr. Rowland's medical situation was not as severe; (3) this case does not involve inadequate medical facilities that were maintained against the advice of doctors; and (4) the inmate in *Carlson* was given inoperative medical equipment, and prescribed "contra-indicated drugs which made [his] attack more severe." Doc. 54 at 4-5.

Mr. Rowland responds that these particular factual differences are beside the point, as the "Constitutional right at issue is identical in both this case and in *Carlson v Green*: the right to adequate medical care to avoid violation of the Eighth Amendment prohibition against 'cruel and unusual' punishment." Doc. 58 at 10. He argues that "[t]he 'generality or specificity' involved in both this case and in *Carlson v. Green* involved failure to render necessary medical care to avoid pain and suffering." *Id.* (citing *Ziglar*, 582 U.S. at 140). According to Mr. Rowland, the "fact that the denial of proper medical care lead [sic] to the death of the prisoner in *Carlson v. Green* and 'only' has caused constant and debilitating pain

to Plaintiff herein is no genuine distinction between the two for purposes of denial of Eighth Amendment guarantees." *Id.* at 10-11.

I am persuaded by the Defendants' distinctions between this case and *Carlson*. Bearing in mind the Supreme Court's admonition that "the new-context inquiry is easily satisfied," the four differences presented here are enough to show that the "case is different in a meaningful way from previous *Bivens* cases." *Ziglar*, 582 U.S. at 139. In particular, the severity of the harm suffered in *Carlson*, and the direct administration of contra-indicated medication that actively worsened the defendant's condition are meaningful differences from this case. The fact that Mr. Rowland's diagnosed medical need was not urgent or emergent further distinguishes this case from *Carlson*. And while Mr. Rowland claims that the pain medication he received was ineffective, there is no evidence that it was contra-indicated.[4] All of those factors in *Carlson* contributed to the necessity of the availability of a *Bivens* claim to deter the actions of individual federal officials. For less severe harms, which are not directly worsened by the actions of federal officials, there is less need for the "extraordinary act" of an implied constitutional deterrent. *Egbert*, 142 S. Ct. at 1806 n.2; *see also Qazi*, 2023 WL 3871969, at *5 to *6 ("Many . . . courts [have] required fatality or a medical emergency to equate [context] with *Carlson*." (collecting cases)). I need not, and therefore do not, determine whether any of these factors alone would suffice to create a new context. But taken together, they more than meet

---

[4]   Mr. Rowland alleges that he was prescribed Trileptal as pain medication, which is known to cause seizures. He claims that he was "afraid to take the Trileptal" because he has had seizures in the past. Doc. 58-1 ¶ 12; *see also* Doc. 45 ¶ 30. Construing this allegation in Mr. Rowland's favor, there is still no indication that the Trileptal was prescribed against any medical recommendation, or that it worsened Mr. Rowland's condition, as was the case in *Carlson*.

the "easily satisfied" standard for a new context. *Ziglar*, 582 U.S. at 149. Mr. Rowland's argument that the constitutional right in this case is the same as in *Carlson* is unavailing.

### B. The BOP Administrative Remedy Program is a sufficient special factor to deny extending *Bivens* to a new context.

Because this case presents a "new context," the question is whether any special factors counsel against extending *Bivens*. This is a difficult hurdle for Mr. Rowland to clear. If there is any "reason to pause before applying *Bivens* in a new context . . . [courts] reject the request." *Hernandez*, 140 S. Ct. at 743. The Tenth Circuit recently observed that "expanding *Bivens* is not just a disfavored judicial activity, it is an action that is impermissible in virtually all circumstances." *Silva*, 45 F.4th at 1140.

The special-factors "inquiry must concentrate on whether the judiciary is well suited . . . to consider and weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 580 U.S. at 136. Special factors include "any alternative, existing process for protecting the [injured party's] interest that itself may amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Id.* (internal quotation marks omitted).

Here, the availability of the BOP Administrative Remedy Program forecloses *Bivens* relief. Both Tenth Circuit and Supreme Court precedent require this result. In *Silva*, the Tenth Circuit plainly stated that "Plaintiff's *Bivens* claim is foreclosed by the availability of the BOP Administrative Remedy Program to address his complaint." 45 F.4th at 1141. "[T]he BOP Administrative Remedy Program is an adequate means through which allegedly unconstitutional actions . . . can be brought to the attention of the BOP and prevented from recurring." *Id.*

(internal quotation marks omitted). The *Silva* court relied on identical holdings by the Supreme Court. *Id.* (citing *Egbert*, 142 S. Ct. at 1807 ("So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy."); *Malesko*, 534 U.S. at 74 ("Inmates in respondent's position also have full access to remedial mechanisms established by the BOP, including . . . grievances filed through the BOP's Administrative Remedy Program.")).

Mr. Rowland makes no argument regarding the special-factors analysis, because he maintains that his case does not present a new context. Doc. 58 at 11-12. I "therefore have little difficulty concluding that the BOP Administrative Remedy Program is an adequate means through which allegedly unconstitutional actions . . . can be brought to the attention of the BOP and prevented from recurring." *Silva*, 45 F.4th at 1141 (quoting *Malesko*, 534 U.S. at 74). I must not imply a *Bivens* remedy in this new context, and Mr. Rowland's Eighth Amendment claim for damages against the defendant federal officials in their individual capacities must be dismissed.

## II. The *Bivens* claim also fails to state an Eighth Amendment violation.

Even if the *Bivens* remedy Mr. Rowland seeks were available, Defendants assert that the individual federal officials are protected by qualified immunity. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Reavis ex rel. Estate of Coale v. Frost*, 967 F.3d 978, 984 (10th Cir. 2020) (internal quotation marks omitted). Once asserted as a defense, the burden is on Mr. Rowland to show that qualified

immunity should not bar his claims. *Id.* This requires a showing "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016); *Prince v. Sheriff of Carter Cty.*, 28 F.4th 1033, 1043 (10th Cir. 2022). "If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017). Mr. Rowland's claim fails at the first step, because, while the Eighth Amendment requires that Mr. Rowland's medical condition not be ignored, it does not require the form of treatment chosen by medical professionals in their good judgment. "A medical decision . . . does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107. And, whether "additional diagnostic techniques or forms of treatment [are] indicated is a classic example of a matter for medical judgment," not a viable basis for an Eighth Amendment claim. *Id.*

An Eighth Amendment claim of deliberate indifference to serious medical needs includes both an objective and a subjective component. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). The objective component turns on whether the medical need or harm suffered is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective component "examines the state of mind of the defendant, asking whether 'the official kn[e]w of and disregard[ed] an excessive risk to inmate health or safety.'" *Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014) (quoting *Farmer*, 511 U.S. at 837).

Mr. Rowland correctly alleges that his hernia was a sufficiently serious medical condition to present a cognizable claim under the Eighth Amendment. A need is serious enough to warrant concern under the Eighth Amendment if it "has been diagnosed by a physician as

mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Prince*, 28 F.4th at 1043. Where a prisoner claims that harm was caused by a delay in medical treatment, he must "show that the delay resulted in substantial harm" such as "lifelong handicap, permanent loss, or considerable pain." *Al-Turki*, 762 F.3d at 1193. At the motion-to-dismiss stage, Mr. Rowland's allegations are sufficient to satisfy the objective component of his claim. *See* Doc. 54 at 9 ("Defendants recognize that a failure to treat a prisoner's hernia could satisfy the objective prong of an Eighth Amendment claim, depending on the circumstances.").

Mr. Rowland, however, fails to adequately plead the subjective component of his claim. His own exhibits show that surgery was only one of multiple possible treatments recommended by medical staff. *See* Docs. 45-32 to 45-38, 45-41. The progressive treatment measures that Mr. Rowland received, including a binder, pain medication, and bottom-bunk pass, were in line with the "recommended conservative management based on documentation [his] hernia [was] reducible and stable." Doc. 45-36; *see also* Doc. 45-33. And he ultimately received surgery for his hernia. With this in mind, the Defendants cannot be said to have denied treatment, or to have been deliberately indifferent in delaying Mr. Rowland's surgery. Even if the decision to prescribe progressive treatment measures was medically incorrect, it does not rise to the level of deliberate indifference under the Eighth Amendment. *Henderson v. Sec'y of Corr.*, 518 F.2d 694, 695 (10th Cir. 1975) ("A "prisoner's right is to medical care—not to the type or scope of medical care which he personally desires."); *Cox v. Owens*, No. 18-cv-0011-WJM-KLM, 2019 WL 630334 (D. Colo. Feb. 14, 2019) (R. & R.) (holding that when an inmate diagnosed with a hernia was prescribed an abdominal binder and prescription medication, despite allegations of worsening conditions,

failure to provide surgery did not rise to a "deliberate refusal to provide medical attention, as opposed to a particular course of treatment"), *adopted by* 2019 WL 2052160 (D. Colo. May 9, 2019) (granting defendants' motion to dismiss).

Mr. Rowland's allegations, accepted as true, do not support a reasonable inference that Defendants were aware of and disregarded a substantial risk to his health, but rather that they provided him with a particular course of treatment, consonant with medical recommendations. Because the Defendants' conduct did not a violate a constitutional right, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 544 U.S. 194, 201 (2001).[5]

Because there is no *Bivens* remedy in this context, and Mr. Rowland's complaint fails to state an Eighth Amendment violation in any event, his Eighth Amendment claim for damages must be dismissed with prejudice.[6] *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (if complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile, dismissal with prejudice is appropriate).

---

[5]   Plaintiff has no right to conduct additional discovery to identify the unnamed federal agents he alleges treated him. They too would be protected by qualified immunity.

[6]   As discussed below, Mr. Rowland has failed to properly exhaust his administrative remedies with respect to his Eighth Amendment claim for injunctive relief. Though his *Bivens* claim would also be subject to dismissal without prejudice on this basis, "[i]n the event that a claim . . . fails to state a claim upon which relief can be granted, . . . the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies." 42 U.S.C. § 1997e(c)(2); *accord Woodford v. Ngo*, 548 U.S. 81, 101 (2006) (recognizing that PLRA exhaustion requirement is not jurisdictional and district court may dismiss meritless claims without addressing exhaustion).

### Motion for Summary Judgment

**I. Mr. Rowland has failed to exhaust his administrative remedies with respect to his Eighth Amendment claim for injunctive relief.**

In addition to his *Bivens* claim for damages under the Eighth Amendment, Mr. Rowland also "seeks additional injunctive relief requiring proper follow[-]up medical treatment," alleging that he still requires treatment for the cysts on his liver, and that due to inadequate post-operative care, he has developed an infection, and his hernia has begun protruding from his abdomen again. Doc. 45 ¶¶ 33-34, p. 16. A federal prisoner seeking injunctive relief for alleged constitutional violations may bring a claim against a federal official in his or her official capacity.[7] *Simmat*, 413 F.3d at 1231-36. Before doing so, though, pursuant to the PLRA the plaintiff must first exhaust his administrative remedies with respect to those alleged violations. *Id.* at 1236-38 (citing 42 U.S.C. § 1997e(a)).

Mr. Rowland has not exhausted his administrative remedies when it comes to his allegedly inadequate post-operative care or the cysts on his liver. The PLRA exhaustion requirement is designed to "affor[d] corrections officials time and opportunity to address complaints internally

---

[7] Mr. Rowland's complaint states that his Eighth Amendment claim "is a cause of action under *Bivens*," Doc. 45 ¶ 29, but a *Bivens* claim by definition is a claim for damages. *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1227-28, 1231-36 (10th Cir. 2005); *see also Malesko*, 534 U.S. at 74 (distinguishing injunctive relief from "the *Bivens* remedy"). Though courts sometimes "characterize constitutional claims to enjoin federal officials as *Bivens* claims," injunctive relief "is not an available remedy under *Bivens*." *Gess v. U.S. Marshals Serv.*, No. 20-cv-1790-PAB-STV, 2020 WL 8838280, at *10 to *11 & n.14 (D. Colo. Dec. 10, 2020) (R. & R.) (citing *Simmat*, 413 F.3d at 1228-36), *adopted in part and rejected as moot in part by* 2021 WL 423436 (D. Colo. Feb. 5, 2021).

before allowing the initiation of a federal case." *Woodford*, 548 U.S. at 93. "It should go without saying that in order for the agency to address the issues on the merits[,] the claims raised in the administrative grievance process must have been the same as those presented in the subsequent complaint." *Goodrich v. Corr. Corp. of Am.*, No. 14-3124-SAC-DJW, 2015 WL 5781704, at *2 (D. Kan. Oct. 1, 2015) (citing *Woodford*, 548 U.S. at 90, 93; *Jones v. Bock*, 549 U.S. 199, 218 (2007)); *accord Toevs v. Milyard*, 563 F. App'x 640, 644 (10th Cir. 2014) (grievance must be particular enough to provide administrators fair opportunity to address the problem that will later form the basis of suit). It cannot be disputed that Mr. Rowland's requests for administrative remedies and the appeals he submitted as part of the BOP Administrative Remedy Program before filing suit do not mention or discuss his post-operative care[8] or his liver cysts. *See* Docs. 45-32 to 45-42, 55-2 to 55-6, 61-1 at 24-31, 55-1 ¶¶ 8-15. And even if Mr. Rowland's administrative requests for hernia surgery were construed broadly to encompass the issues for which he now seeks injunctive relief, it is undisputed that he did not properly exhaust those requests because he did not resubmit his appeal to the central office after it was rejected on procedural grounds.[9] *See Woodford*, 548 U.S. at 83-84, 91 (procedurally defective administrative grievances

---

[8]   *See Adams v. Fochee*, No. 12-cv-01076-PAB-CBS, 2013 WL 3093479, at *8 (D. Colo. June 18, 2013) (grievances pre-dating complained-of conduct cannot exhaust administrative remedies (citing *Ross v. Cnty. of Bernalillo*, 365 F.3d 1181, 1188 (10th Cir. 2004), *abrogated on other grounds by Jones*, 549 U.S. 199)).

[9]   To the extent Mr. Rowland contends that he has attempted to initiate or properly exhaust any administrative remedy request relating to his liver cysts or post-operative care since filing this lawsuit, such attempts are irrelevant here. *See Ruppert v. Aragon*, 448 F. App'x 862, 863 (10th Cir. 2012) (PLRA makes exhaustion a precondition to filing suit, so "an action brought before administrative remedies are exhausted must be dismissed without regard to concern for judicial efficiency," even if remedies are exhausted by the time the case is ripe for decision).

are insufficient to satisfy exhaustion requirement; proper exhaustion "means using all steps that the agency holds out"). Defendants have therefore met their burden of proving the affirmative defense of failure to exhaust. *See Jones*, 549 U.S. at 212 (failure to exhaust under PLRA is affirmative defense).

Mr. Rowland does not attempt to argue that he properly exhausted his administrative remedies before filing suit. Instead, he contends that his failure to exhaust should be excused because administrative remedies were effectively unavailable to him. *See* Doc. 59 at 8-15. The PLRA only requires exhaustion of "such administrative remedies as are available." 42 U.S.C. § 1997e(a). "[A]n administrative remedy is not 'available' under the PLRA if 'prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of [the] administrative remedy.'" *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011); *see also Ross v. Blake*, 578 U.S. 632, 643 (2016) (remedies unavailable if administrators lack or disclaim authority to provide relief, administrative scheme is so opaque that no ordinary prisoner could navigate it, or officials thwart inmates from using it). The burden is on Mr. Rowland to show that administrative remedies were unavailable to him. *Id.* at 1254.

Mr. Rowland avers that administrative remedies were unavailable because prison officials denied him the necessary forms. Doc. 61-1 ¶¶ 7, 10. But he offers no evidence that he was denied forms besides his own conclusory testimony, and "[s]uch conclusory and self-serving statements, even if presented in an affidavit, are insufficient to create a genuine issue of fact to survive summary judgment." *Thomas v. U.S. Bureau of Prisons*, 282 Fed. App'x 701, 704 (10th Cir. 2008); *accord Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007) (prisoner claimed he was hampered in exhausting administrative remedies, "[b]ut he gives no specifics; bald allegations cannot preclude summary

judgment"). Mr. Rowland's testimony that he was denied forms is also belied by the fact that he did in fact submit the appropriate administrative remedy forms requesting care for his hernia at all four steps of the BOP Administrative Remedy Program. Docs. 45-33, 45-36, 45-40 to 45-42; *cf. May v. Segovia*, 929 F.3d 1223, 1235 (10th Cir. 2019) (prisoner did not show administrative remedies were unavailable where he failed to explain how he was dissuaded from filing grievance as to issue in suit but not from filing numerous other grievances in same time period); *Calbart v. Sauer*, 504 F. App'x 778, 784 (10th Cir. 2012) (prisoner's contention that defendants interfered with ability to access necessary forms was "belied by the numerous grievance forms in the record"); *Holmes v. Rudd*, No. 20-cv-00016-NYW, 2020 WL 7868466, at *11 to *12 (D. Colo. Dec. 31, 2020) (no genuine issue of fact as to availability of administrative remedies where prisoner claimed he was prevented from submitting BP-9 and BP-10 forms yet successfully submitted BP-11).

Mr. Rowland also contends that it was impossible for him to comply with the procedural requirements necessary to perfect his appeal to the BOP central office. His BP-11 was rejected because "you did not provide a copy of your institution administrative remedy request (BP-9) form or a copy of the (BP-09) response from the warden." Doc. 45-42. He was given fifteen days to resubmit his appeal. *Id.* He does not contest that he failed to do so, but he avers that "[t]he reason why I did not attach the denial was because I never received the denial. It was impossible for me to attach something I did not have." Doc. 61-1 ¶ 7. Numerous cases hold, however, that when an administrative grievance is rejected for a procedural deficiency such as this, the remedy was not "unavailable" if the prisoner was given an opportunity to cure the deficiency but did not make any attempt to do so. *See, e.g.*, *Jernigan v. Stuchell*, 304 F.3d 1030,

1032-33 (10th Cir. 2002) ("The Director rejected the appeal because there was no response from the warden and told Mr. Jernigan that he had ten days in which to cure that deficiency. Instead of attempting to cure, Mr. Jernigan filed this lawsuit. . . . [He] may not successfully argue that he had exhausted his administrative remedies by, in essence, failing to employ them . . . .").[10] Mr. Rowland could have tried to obtain a copy of the warden's response to his BP-9 or resubmitted his BP-11 with a copy of the BP-9 and an explanation that he had not received the response, but he did not.[11]

Mr. Rowland's remaining arguments regarding exhaustion and the availability of administrative remedies are also unavailing. His belief that the responses to his administrative requests were inadequate or inaccurate, his assertions that he sometimes did not receive responses to his requests, and his argument that his repeated but unexhausted requests for treatment were sufficient to give the BOP a fair opportunity to consider and address his complaints do not excuse his failure to comply with the PLRA exhaustion requirement. *See Jernigan*, 304 F.3d at 1032 (plaintiffs must exhaust all available procedures even if doing

---

[10]  *Accord Starks v. Lewis*, 313 F. App'x 163, 165-66 (10th Cir. 2009); *Muhammad v. Berry*, 198 F. App'x 738, 739-40 (10th Cir. 2006); *Hilliard v. Ray*, 123 F. App'x 908, 910 (10th Cir. 2005); *Hoover v. West*, 93 F. App'x 177, 179-81 (10th Cir. 2004); *Fernandez-Perez III*, 2021 WL 4515253, at *1 to *2; *Thomas v. Williams*, No. 21-cv-02075-LTB-GPG, 2022 WL 20596629, at *5 (D. Colo. Mar. 7, 2022) (R. & R.), *adopted by* 2022 WL 20596634 (D. Colo. Apr. 13, 2022); *Kentz v. Borja*, No. 08-cv-01064-REB-MEH, 2009 WL 3088312, at *7 (D. Colo. Sept. 21, 2009).

[11]  Though Mr. Rowland may not have received the response, he did have a copy of his BP-9 request, as evidenced by the fact that he attached it to his complaint. Doc. 45-40. And the BOP Administrative Remedy Program provides an avenue to request and obtain copies of responses by Remedy ID number. 28 C.F.R. § 542.19.

so appears futile; alleged ineffectiveness of available remedies does not excuse failure to exhaust); *Adams*, 2013 WL 3093479, at \*2 (absence of timely response from BOP functions as implicit denial that inmate may appeal to the next level (citing 28 C.F.R. § 542.18); doctrine of substantial compliance does not apply to PLRA exhaustion). Mr. Rowland has not demonstrated a genuine dispute of material fact as to whether proper exhaustion of administrative remedies was unavailable to him.

Mr. Rowland requests discovery pursuant to Federal Rule of Civil Procedure 56(d), arguing that he cannot effectively respond to Defendants' summary-judgment motion without first obtaining copies of all his administrative remedy requests and medical records and deposing BOP staff. Doc. 59 at 6-8; Doc. 59-2. But given the undisputed fact that Mr. Rowland made no attempt to resubmit his BP-11 after it was procedurally rejected, the discovery he seeks would not change the outcome here. *See Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1554 (10th Cir. 1993) (Rule 56(d) relief not warranted where information sought is irrelevant to summary-judgment motion). Though he contends that the index of his administrative remedy requests attached to Defendants' motion, Doc. 55-2, is incomplete, he provides no basis for that contention, *see* Doc. 59-2 ¶ 5. *Hamric v. Wilderness Expeditions, Inc.*, 6 F.4th 1108, 1119 (10th Cir. 2021) (Rule 56(d) "is not a license for a fishing expedition"). And though he avers that he has "filled out and submitted numerous forms BP-8, BP-9, BP-10, and BP-11," Doc. 61-1 ¶ 7, he does not identify any specific submission that he believes is missing from the index provided by the Defendants or any other discoverable information that would demonstrate proper exhaustion or the unavailability thereof. *See Adams v. C3 Pipeline constr. Inc.*, 30 F. 4th 943, 968-69 (10th Cir. 2021) (Rule 56(d) motion must identify with specificity

probable facts to be discovered that would rebut summary-judgment motion).

To the extent that the amended complaint seeks injunctive relief relating to Mr. Rowland's post-operative care and liver cysts, his Eighth Amendment claim must be dismissed without prejudice for failure to exhaust administrative remedies as required by the PLRA. *See Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) (dismissal for failure to exhaust administrative remedies as required by PLRA should ordinarily be without prejudice).

## II.  Mr. Rowland has failed to exhaust his FTCA claims.

Mr. Rowland alleges that Defendants' deliberate indifference to his medical needs constitutes wanton disregard for his suffering, sufficient for negligence and gross-negligence claims under the FTCA. Under the FTCA, individuals may bring tort suits against the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

But to bring such claims under the FTCA, Mr. Rowland is required to "have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing."[12] 28 U.S.C. § 2675(a). The agency's denial can come either in the form of a written denial, or a six-month period without disposition of the claim. 28 U.S.C. § 2675(a)-(b). The Tenth Circuit has held that a failure to

---

[12]  Unlike the PLRA exhaustion requirement, the FTCA exhaustion requirement is jurisdictional and cannot be waived. *Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016).

comply with this exhaustion procedure forecloses relief under the FTCA. *Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999).

Mr. Rowland failed to comply with this procedure. He concedes that he presented his claim to the BOP on June 2, 2022. Doc. 59 at 16; *see also* Doc. 45-43. But Plaintiff's original complaint was filed on February 11, 2022, before he submitted that claim, and his amended complaint was filed on October 10, 2022, before the BOP disposed of the claim or the time for doing so had expired. Docs. 1, 45. His failure to present his claim to the BOP until after he filed this suit is fatal to his negligence and gross-negligence claims under the FTCA. *See Duplan*, 188 F.3d at 1199 (FTCA claims must be exhausted before filing suit; premature complaint generally cannot be cured by exhausting after suit is filed and then amending complaint; instead, plaintiff must file new suit).

Because Mr. Rowland has failed to exhaust his administrative remedies with respect to his negligence and gross-negligence claims as required by the FTCA, these claims must be dismissed without prejudice. *See Gabriel v. United States*, 683 F. App'x 671, 672-74 (10th Cir. 2017) (dismissal for failure to exhaust administrative remedies under FTCA is dismissal for lack of subject-matter jurisdiction and should be without prejudice (citing *Brereton*, 434 F.3d at 1218)).

## CONCLUSION

It is **ORDERED** that:

Defendants' Motion to Dismiss, **Doc. 54**, is **GRANTED IN PART** as to the Plaintiff's Eighth Amendment claim for damages, which is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted; and

Defendants' Motion for Summary Judgment, **Doc. 55**, is **GRANTED IN PART** to the extent that the Plaintiff's Eighth Amendment claim for injunctive relief and the Plaintiff's negligence and gross-negligence claims are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies as required by the PLRA and the FTCA, respectively; and

The Clerk of Court is **DIRECTED** to close this case.

DATED: September 26, 2023                    BY THE COURT:

Daniel D. Domenico
United States District Judge